1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT EUGENE BURROW,

          Petitioner,

      v.

STEVE SINCLAIR,

          Respondent.

Case No. 10-cv-1241-JLR-JPD

REPORT AND RECOMMENDATION

## I. INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Robert E. Burrow, a state inmate proceeding *pro se*, has filed a 28 U.S.C. § 2254 petition for a writ of habeas corpus, which challenges his 2007 jury convictions in King County Superior Court on two counts of attempted murder in the first degree, one count of attempted murder in the second degree, two counts of burglary in the first degree, and one count of violating a domestic violence restraining order, with deadly weapon enhancements. Dkt. 1; Dkt. 12, Ex. 1.  Respondent has filed an answer opposing the petition, Dkt. 10, to which petitioner has replied, Dkt. 13.  After careful consideration of the petition, the briefs, all governing authorities and the balance of the record, the Court recommends that the petition be DENIED and this case DISMISSED with prejudice.

REPORT AND RECOMMENDATION
PAGE - 1

1              II.        FACTS AND PROCEDURAL HISTORY

2         A.      Factual Background

3         The Washington State Court of Appeals summarized the relevant facts of this case as

4    follows:

5                 Joni Butz worked for Jeff Hulsey at his truck dealership for
                  over 16 years, beginning in 1989. Although Butz and Hulsey had
6                 a romantic relationship early on, when their romance ended, they
                  remained close friends and Butz continued to work for Hulsey.
7                 Butz dated Robert Burrow for nine years. Their relationship
                  ended in August 2004 after incidents in a criminal charge against
8                 Burrow prompted Butz to obtain a protection order. Early in
                  2005, Butz began dating Steve Benson, a salesman at Hulsey's
9                 dealership.

10                In the early morning hours of April 9, 2005, Burrow
11                appeared at Hulsey's home in Snohomish County and fought
                  with Hulsey. Shortly thereafter, Burrow went to Butz's home in
12                King County and confronted Butz and Benson. Based on the
                  events of that morning, the State charged Burrow with three
13                counts of attempted murder in the first degree, two counts of first
                  degree burglary, and a felony violation of a court order, each
14                with a deadly weapon enhancement.

15                At trial, Hulsey testified that after working until 4 a.m., he
16                was preparing to go to bed when he heard strange noises. He
                  found Burrow bleeding from a leg wound that apparently
17                occurred when Burrow was kicking his way through the locked
                  French doors. Hulsey gave Burrow a hand towel and tape to stop
18                the bleeding. Burrow then demanded to see Butz and searched
                  the house for her. When Hulsey encouraged Burrow to leave,
19                Burrow attacked Hulsey with a knife. After receiving several
20                stab wounds to the shoulder, arms and neck, Hulsey escaped, got
                  his gun, shot Burrow, called 911, and ran out of the house.
21
22                Butz and Benson testified that they awoke to hear Burrow
                  breaking into Butz's condominium. While Butz was calling 911,
23                Benson watched Burrow reach in through the broken window
                  and unlock the door. According to Benson, Burrow came directly
24                to him and stabbed him in the chest. Benson hit Burrow with a
                  metal baton and hurried out of the room, attempting to draw
25                Burrow away from Butz. Before waking up on the dining room
26                floor, Benson remembered Burrow following him. Benson

REPORT AND RECOMMENDATION
PAGE - 2

returned to the bedroom to find Burrow holding a knife to Butz's neck. Benson tackled Burrow and held him until the police arrived.

Burrow testified in his defense that he went to Hulsey's house to demand the money that Hulsey owed him from a boat purchase that had been the subject of an insurance fraud perpetrated by Hulsey and Butz. According to Burrow, when he threatened to call the police to report Hulsey's scam, Hulsey attacked him with a knife and shot him. He left to go to the hospital, became confused, and eventually drove to Butz's home, intending to ask for help. He claimed to be unable to recall much of the events that occurred after he arrived, other than accidently breaking and then squeezing through a window.

Police and medical personnel testified that after his arrest, Burrow was in and out of consciousness. At Harborview Medical Center, doctors noted Burrow's extremely low blood pressure and that medics had treated him by inserting a breathing tube, but his wounds were not severe. Burrow's toxicology screen was positive for amphetamines, methamphetamine, evidence of marijuana, and evidence of some anti-anxiety medication, but medical personnel did not perform tests to determine the amounts of these substances.

The jury found Burrow guilty of the lesser included charge of attempted murder in the second degree as to Hulsey, two counts of attempted murder in the first degree as to Butz and Benson as charged, two counts of first degree burglary, and felony violation of a protection order, each with a deadly weapon enhancement. The trial court imposed a standard range sentence.

Following trial, a juror told the prosecutor that she brought a measuring tape into the jury room and that the jurors used it to measure the blade of the broken knife found at Hulsey's home. The prosecutor and the juror signed affidavits as to these facts.

Dkt. 12, Ex. 4 at 1-2.

        B.    <u>Direct Review</u>

Petitioner appealed his convictions through counsel to the Washington State Court of Appeals. Dkt. 12, Ex. 2. On August 3, 2009, in an unpublished opinion, the Court of Appeals affirmed petitioner's convictions. *Id.*, Ex. 4. The Court of Appeals issued its mandate

REPORT AND RECOMMENDATION
PAGE - 3

1   terminating review of petitioner's appeal on September 24, 2009. *Id*., Ex. 5. Neither petitioner

2   nor his counsel filed a motion for discretionary review of the Court of Appeals' decision to the

3   Washington State Supreme Court. *See* Dkt. 1 at 3; Dkt. 10 at 4. Petitioner has never filed a

4   personal restraint petition ("PRP") seeking collateral review of his convictions in the state

5   courts. *See* Dkt. 1 at 10-12.

6       C.   Federal Collateral Review

7           On August 2, 2010, petitioner filed the instant 28 U.S.C. § 2254 petition for writ of

8   habeas corpus. Dkt. 1. Petitioner is currently incarcerated at the Washington State

9   Penitentiary in Walla Walla, Washington.

10                      III.    ISSUES PRESENTED

11          Petitioner's habeas corpus petition raises the following three grounds for relief:

12      1.    Ineffective assistance by appointed counsel – violation of 6th Amendment.

13
14      2.    Trial Court erred when it denied funds for expert witness – violating right to due
              process and fair trial.

15
16      3.    Juror Misconduct – extrinsic evidence allowed to affect Jury's deliberations and
              determinations.

17  Dkt. 1 at 6-10; *see also* Dkt. 13 at 1.

18                      IV.    DISCUSSION

19      A.   Petitioner's Claims Were Not Properly Exhausted in State Court.

20          The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No.

21  104-132, 110 Stat. 1214 (1996), governs petitions for habeas corpus filed by prisoners

22  convicted in state courts. *See* 28 U.S.C. § 2254. Before a federal district court can review the

23  merits of a § 2254 petition, a petitioner must first exhaust state court remedies. 28 U.S.C.

24  § 2254(b)(1)(A); *Fields v. Waddington*, 401 F.3d 1018, 1020 (9th Cir. 2005). The purpose of

25  the exhaustion doctrine is to preserve federal-state comity which, in this setting, provides state

26  courts an initial opportunity to correct violations of a prisoner's federal rights. *Picard v.*

REPORT AND RECOMMENDATION
PAGE - 4

*Connor*, 404 U.S. 270, 275 (1971); *Ex parte Royall*, 117 U.S. 241, 251-52 (1886).  A petitioner

can satisfy the exhaustion requirement by either (1) fairly and fully presenting each federal

claim to the highest state court from which a decision can be rendered, or (2) demonstrating

that no state remedies are available.  *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996).  A

petitioner fairly and fully presents a claim if it is submitted "(1) to the proper forum, (2)

through the proper vehicle, and (3) by providing the proper factual and legal basis for the

claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations

omitted).  A state prisoner must "give the state courts one full opportunity to resolve any

constitutional issues by invoking *one complete round* of the State's established appellate

review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (emphasis added); *Casey v.*

*Moore*, 386 F.3d 896, 916 (9th Cir. 2004) ("[T]o exhaust a habeas claim, a petitioner must

properly raise it *on every level* of direct review.") (emphasis added).  The Ninth Circuit also

requires that a habeas petitioner explicitly identify the federal basis of his claims either by

identifying specific portions of the federal Constitution or statutes, or by citing federal or state

case law that analyzes the federal Constitution.  *Insyxiengmay*, 403 F.3d at 668.  Alluding to

broad constitutional principles, without more, does not satisfy the exhaustion requirement.  *Id.*

Here, petitioner originally raised the three grounds set forth in his habeas petition on

direct appeal to the Court of Appeals.  *See* Dkt. 12, Ex. 3 at 1-2.  However, these federal claims

have never been presented to the Washington Supreme Court.  Accordingly, the grounds set

forth in petitioner's habeas petition were not properly exhausted in state court.

>   B.   Federal Review of Petitioner's Claims Is Precluded Because the Grounds Are
>        Procedurally Defaulted.

The procedural default doctrine is a separate and distinct defense from the exhaustion

requirement that bars federal habeas review.  *See Trest v. Cain*, 522 U.S. 87, 89 (1997)

("procedural default is normally a 'defense' that the State is 'obligated to raise' and

'preserve'"); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 850 (1999) (Stevens, J. dissenting)

REPORT AND RECOMMENDATION
PAGE - 5

1   (discussing the difference between the exhaustion doctrine and procedural default doctrine).

2   Although different and distinct doctrines, the procedural default doctrine and the exhaustion

3   doctrine intertwine when habeas claims, as here, have not been properly exhausted in state

4   court.  A procedural default resulting in technical exhaustion of a claim is considered improper

5   exhaustion.  *See Harmon v. Ryan*, 959 F.2d 1457, 1461 (9th Cir. 1992) (finding that claims

6   exhausted due to procedural default were "not properly exhausted").

7        A procedural default in state court generally leads to a preclusion of federal habeas

8   review if the last state court rendering a judgment in the case rests its judgment on the

9   procedural default.  *See Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Franklin v.*

10  *Johnson*, 290 F.3d 1223, 1230-31 (9th Cir. 2002).  However, if the petitioner has not presented

11  his federal claims to the state courts, the state courts do not need to expressly rely upon

12  procedural default as a predicate to a federal court's determination that federal review is barred

13  due to procedural default.  *Harris*, 489 U.S. at 263 n.9.  In that case, the "federal courts may

14  properly determine whether the claim has been procedurally defaulted under state law. . . ." *Id.*

15  at 269 (O'Connor, J., concurring).

16       Here, the Court finds that petitioner's claims for federal habeas relief were procedurally

17  defaulted in state court.  Specifically, petitioner had thirty days from August 3, 2009, the date

18  that the Court of Appeals issued its decision denying petitioner's direct appeal, to file a motion

19  for discretionary review to the Washington Supreme Court.  *See* Wash. R. App. P. 13.5(a).

20  However, petitioner failed to do so.  *See* Dkt. 12, Ex. 4.  As a result, if petitioner were to

21  present these claims in a motion for discretionary review, the motion would be denied.

22  Similarly, petitioner is barred from presenting his claims in a PRP to the Washington courts,

23  because petitioner failed to file a PRP within one year after the Court of Appeals' mandate on

24  September 25, 2009.  *See* R.C.W. § 10.73.090(1) ("No petition or motion for collateral attack

25  on a judgment and sentence in a criminal case may be filed more than one year after the

26  judgment becomes final. . . ."); Dkt. 12, Ex. 5.

REPORT AND RECOMMENDATION
PAGE - 6

1    Before federal review is precluded due to a procedural default, however, the state

2    procedural rule must be an "independent and adequate state ground." *See Hanson v. Mahoney*,

3    433 F.3d 1107, 1113 (9th Cir. 2006).  "In order for the procedural default doctrine to apply, a

4    state rule must be clear, consistently applied, and well-established at the time of the petitioner's

5    purported default." *Id.*  A procedural default is not "independent" if the state procedural bar

6    depends upon a determination of federal law, and it is not "adequate" if the state courts bypass

7    the procedural rule. *See Harmon*, 959 F.2d at 1461.  Where a state court decision denying relief

8    would be based on an independent and adequate state law ground, even a procedural one, a

9    habeas petitioner is procedurally defaulted from bringing his claims to the federal courts. *Casey*

10   *v. Moore*, 386 F.3d 896, 920 (9th Cir. 2004).  This is because if state prisoners were allowed to

11   meet the federal habeas exhaustion requirement by procedurally defaulting their claims in state

12   courts, "the comity interests that animate the exhaustion rule could easily be thwarted."

13   *O'Sullivan*, 526 U.S. at 854.

14   Turning to the instant case, petitioner has not made any showing that R.C.W. § 10.73.90

15   or Washington Rule of Appellate Procedure 13.5(a) are not independent and adequate state law

16   grounds.  Accordingly, federal habeas review of petitioner's claims is precluded because of

17   petitioner's procedural default of these claims in state court.

18       C.    Petitioner Fails to Show Cause and Prejudice or a Miscarriage of Justice.

19   If a federal habeas petitioner can show cause for the procedural default in state court

20   and actual prejudice, federal review of habeas claims is permitted despite the procedural

21   default in state court. *See Noltie v. Peterson*, 9 F.3d 802, 804-05 (9th Cir. 1993).  To

22   demonstrate cause, a habeas petitioner must show that the procedural default was due to "some

23   objective factor external to the defense [that] impeded counsel's efforts to comply with the

24   State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  If the petitioner had no

25   constitutional right to counsel in the proceeding in which the default occurred, however,

26   attorney error cannot constitute cause to excuse the procedural default. *See Coleman v.*

1   *Thompson*, 501 U.S. 722, 752-54 (1991); *Manning v. Foster*, 224 F.3d 1129, 1133 (9th Cir.

2   2000); *Poland v. Stewart*, 169 F.3d 573, 588 (9th Cir. 1999).  In order to show prejudice, a

3   petitioner bears the burden of showing not merely that an error created a possibility of

4   prejudice, but that the error worked to petitioner's actual and substantial disadvantage,

5   infecting the entire trial with constitutional error.  *Carrier*, 477 U.S. at 494.  *See also Manning*,

6   224 F.3d at 1135-36 (holding that "prejudice is presumed when an attorney fails to file an

7   appeal against the petitioner's express wishes," and remanding for further findings as to the

8   cause requirement).  An additional exception to the procedural default rule, not at issue here,

9   applies where a habeas petitioner can demonstrate a sufficient probability that a federal court's

10  failure to review his federal claim will result in a fundamental miscarriage of justice.  *See Cook*

11  *v. Schriro*, 538 F.3d 1000, 1028 (9th Cir. 2008).

12          Petitioner alleges that ineffective assistance of counsel directly resulted in his failure to

13  exhaust in the state courts.  Specifically, plaintiff avers that he failed to exhaust his claims on

14  direct appeal because his attorney "did not file [an] appeal to Supreme Court, abandoned my

15  case without notice and allowed me to believe this had been done."  Dkt. 1 at 12; *see also id*. at

16  6, 8, 9.  Petitioner does not allege, however, that his appellate counsel disregarded petitioner's

17  express request to file a motion for discretionary review or a PRP with the Washington

18  Supreme Court.  *See Manning*, 224 F.3d at 1135-36.  Rather, petitioner concedes that he

19  simply "assumed (however wrong) that any and all necessary requirements were being

20  addressed properly by his attorney of record."  Dkt. 13 at 9.

21          Without more, petitioner has not demonstrated ineffective assistance of counsel.

22  Specifically, as petitioner had no right to counsel on discretionary review or in a collateral

23  challenge, he likewise had no right to effective assistance of counsel at those stages of the

24  proceedings.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (providing that "a

25  defendant has no federal constitutional right to counsel when pursuing a discretionary appeal

26  on direct review of his conviction," and similarly has no "constitutional right to counsel when

REPORT AND RECOMMENDATION
PAGE - 8

1   mounting collateral attacks upon [his or her] convictions[.]").  *See also Wainwright v. Torna*,

2   455 U.S. 586, 587-88 (1982); *Ross v. Moffitt*, 417 U.S. 600, 610 (1974).  As a result,

3   petitioner's assertion that his appellate counsel neglected to file a motion for discretionary

4   review to the Supreme Court does not establish cause to excuse petitioner's procedural default.

5   Nor does petitioner provide any evidence to establish prejudice or that the failure to consider

6   his claims will result in a fundamental miscarriage of justice.  Accordingly, petitioner's federal

7   habeas claims remain unexhausted and procedurally barred.

8             D.    Certificate of Appealability

9         A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

10  court's dismissal of his federal habeas petition only after obtaining a certificate of appealability

11  from a district or circuit judge.  A certificate of appealability may issue only where a petitioner

12  has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C.

13  § 2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could

14  disagree with the district court's resolution of his constitutional claims or that jurists could

15  conclude the issues presented are adequate to deserve encouragement to proceed further."

16  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Under this standard, this Court concludes that

17  petitioner is not entitled to a certificate of appealability with respect to his claims.

18                          V.    CONCLUSION

19        For the foregoing reasons, this Court recommends that the petition be DENIED and this

20  case DISMISSED with prejudice.  A proposed Order accompanies this Report and

21  Recommendation.

22        DATED this 5th day of January, 2011.

23                          _James P. Donohue_

24                          _____
                            JAMES P. DONOHUE

25                          United States Magistrate Judge

26

REPORT AND RECOMMENDATION
PAGE - 9